# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2758

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | Appeal from the United States |
| | * | District Court of the |
| v. | * | Western District of Missouri. |
| | * | |
| Clifton D. Taylor, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: April 11, 2011
Filed: August 30, 2011

_____

Before LOKEN, BALDOCK,[*] and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Clifton D. Taylor entered the FDIC-insured Central Bank of Kansas City, slid a threatening note to a bank-teller, and exited the bank with $2,700 in hundred-dollar bills. Bank employees followed Taylor as he fled on foot, abandoned the green cap and jacket he was wearing, and entered a store. They called the police, who arrested Taylor as he left the store. At Taylor's bank robbery trial, the government presented video evidence of Taylor in the store and DNA evidence linking Taylor to the green hat found in a parked truck along with a leather jacket and $2700 cash. Based on this

_____

[*]The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

and other overwhelming evidence, a jury convicted Taylor of bank robbery in violation of 18 U.S.C. § 2113(a).  Taylor appeals the conviction, arguing that he is entitled to a new trial because the district court[1] abused its discretion when it denied his repeated pretrial requests for new appointed counsel, which rendered involuntary his ultimate decision to waive his Sixth Amendment right to counsel and defend himself at trial.  We affirm.

## I.

Taylor was indicted and arraigned in April 2009.  Assistant Federal Public Defender Travis Poindexter was appointed to represent Taylor and moved to continue trial from the June docket.  Taylor soon filed many extensive *pro se* motions, followed in June by a Motion for Ineffective Assistance seeking the appointment of substitute counsel.  Magistrate Judge Larsen held a hearing and asked Taylor why he was dissatisfied with attorney Poindexter.  Taylor complained that Poindexter had refused to file Taylor's *pro se* motions "alleging Government misconduct" and requesting a hearing "to challenge the reliability of witness statements."  After a lengthy colloquy discussing these issues, Magistrate Judge Larsen concluded that a different lawyer would not have filed those motions.[2]  "So I'm not going to replace him because I don't think he's done anything or failed to do anything that reflects on the adequacy of the

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.  Pretrial motion rulings, including those at issue on appeal, were made initially by the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

[2]Appellate counsel argues that Magistrate Judge Larsen "missed" Taylor's legitimate concern with Poindexter's failure to move to suppress an incriminating statement Taylor made to FBI agents.  After careful review of the hearing transcript and Taylor's *pro se* motions, we conclude Taylor expressed a desire to suppress only inadmissible "hearsay evidence," not his admission.  The record on appeal contains not the slightest hint that a motion to suppress the admission had merit.

-2-

representation." Magistrate Judge Larsen explained that Taylor's options were to continue to be represented by Poindexter, to retain substitute counsel, or to represent himself with Poindexter likely serving as standby counsel. Taylor's response: "I want a change of venue."

Taylor next filed a "criminal complaint" against Poindexter alleging due process violations and entrapment. He also filed numerous additional *pro se* motions, including one that Magistrate Judge Larsen interpreted as a motion to recuse. All were denied because Taylor was represented by counsel, but Magistrate Judge Larsen also explained why each motion was baseless. In denying the motion to recuse, Magistrate Judge Larsen explained:

> Defendant's second reason . . . is essentially that I will not give him his own way. Defendant asked for a new attorney. I held a hearing on that motion and determined that Mr. Poindexter had done a satisfactory job of representing defendant and that no other attorney would have handled defendant's issues differently. Refusing to terminate an attorney and hire a new one to start all over, without any plausible grounds at all, does not provide justification for my recusal. . . . There is no competent attorney who would do the things defendant is requesting as they have no basis in law.

After this ruling, Taylor continued to file numerous *pro se* motions, including an August motion giving notice that his appointed counsel was making him insane. Attorney Poindexter filed a motion for mental examination, which was granted. In October, Taylor was found competent. He filed more *pro se* motions and again alleged ineffective assistance of counsel, prompting Magistrate Judge Larsen to hold another hearing on the repeated requests for appointment of new counsel. At the start of this hearing, Magistrate Judge Larsen asked Taylor, "tell me what it is that you're complaining about here with regard to Mr. Poindexter." Taylor replied:

"I don't like him. He's not working in my best interest. He's not arguing with the evidence. He hasn't filed one motion since I've been incarcerated. He doesn't come to see me, he doesn't talk about my case. And he's like a dead-beat dad. And I don't need him on my case. And it's going to be a problem because I don't want him on my case."

Taylor then lost control and was removed from the courtroom. Poindexter advised the court that Taylor had refused Poindexter's recent attempts at contact. Returned to the courtroom, Taylor reiterated the meritless evidentiary motions he wanted Poindexter to file and asserted, "there's just no way he's going to be working in my best interest because I requested that he be removed from the bar." Magistrate Judge Larsen explained to Taylor the flaws in each of his motions. After a further exchange, Magistrate Judge Larsen informed Taylor he was not going to replace Poindexter, upon which Taylor stood up violently, overturning the counsel table, an action raising serious security issues that were carefully resolved at trial.

Taylor continued to file ineffective assistance motions asserting the same issues, which were denied without a hearing. Three weeks before the January 2010 trial, Taylor filed a motion to proceed *pro se*. Magistrate Judge Larsen held a hearing at which he advised Taylor regarding aspects of pretrial preparation and trial for which Taylor would become responsible, and extensively warned Taylor of the dangers of proceeding *pro se*. When Taylor persisted, Magistrate Judge Larsen found a knowing, intelligent, and voluntary waiver of Taylor's Sixth Amendment right to counsel, relieved Poindexter as appointed counsel, and appointed Poindexter as standby counsel "to be available in the courtroom if we run into a problem." When Taylor protested, "I want [Poindexter] out of my life," Magistrate Judge Larsen directed that Poindexter "be available by phone," not in the courtroom, "if that's acceptable with Judge Smith, who makes the final decisions on these issues."

At the start of trial, Judge Smith again cautioned Taylor about the disadvantages of representing himself and offered to have standby counsel Poindexter reappointed

as trial counsel.  Taylor reaffirmed his waiver of counsel and refused to have any assistance from Poindexter at trial.

## II.

A motion for appointment of substitute counsel is committed to the district court's sound discretion.  United States v. Webster, 84 F.3d 1056, 1062 (8th Cir. 1996).  Taylor argues the district court abused its discretion in denying his repeated motions for appointment of new counsel.  To prevail on this claim, Taylor must show "justifiable dissatisfaction" with attorney Poindexter, which "can arise from irreconcilable conflict, a complete breakdown in communication, or any other factor interfering significantly with an attorney's ability to provide zealous representation." United States v. Boone, 437 F.3d 829, 839 (8th Cir. 2006).  Given the importance of the attorney-client relationship, "[t]he court must conduct an adequate inquiry into the nature and extent of an alleged breakdown in attorney-client communications." United States v. Barrow, 287 F.3d 733, 738 (8th Cir.), cert. denied, 537 U.S. 1024 (2002).

It is clear from this record that the district court made a careful and thorough inquiry into Taylor's repeated claims of justifiable dissatisfaction with appointed counsel Poindexter before denying Taylor's requests for substitute counsel.  "The defendant's right to counsel . . . does not involve the right to a 'meaningful relationship' between an accused and his counsel."  United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992), citing Morris v. Slappy, 461 U.S. 1, 13-14 (1983). Thus, frustration with appointed counsel's performance or disagreement with counsel's tactical decisions is not justifiable dissatisfaction.  "The proper focus in evaluating claims of dissatisfaction with counsel is on the quality of advocacy." United States v. Exson, 328 F.3d 456, 460 (8th Cir.) (citation omitted), cert. denied, 540 U.S. 1011 (2003).  After careful review of the record, we agree with Magistrate Judge Larsen that Taylor failed to show that attorney Poindexter was unprepared, was

unable or unwilling to continue representing Taylor, or had failed to take actions on Taylor's behalf that would cause "justifiable dissatisfaction" with the quality of Poindexter's advocacy.

By the time Magistrate Judge Larsen granted Taylor's request to represent himself at trial, it was obvious there was "a complete breakdown in communication" between attorney and client. For months, Taylor had refused all contact with a competent appointed attorney. He filed a "criminal complaint" against counsel, demanded a "change of venue," and employed every other tactic he could think of to coerce the court into appointing a new counsel with whom, the court reasonably concluded, Taylor was unlikely to have any better relations. Is this a variety of "justifiable dissatisfaction" requiring us to conclude the district court abused its discretion? This court, and others, have sensibly declined to do so. Taylor "was not entitled to new counsel if his refusal to cooperate with [Poindexter] was simply a 'stonewalling effort to select counsel of his own choice.'" Hunter v. Delo, 62 F.3d 271, 275 (8th Cir. 1995), quoting United States v. Horon, 845 F.2d 1414, 1418 (7th Cir. 1988); accord United States v. Simpson, 645 F.3d 300, ___ (5th Cir. 2011). Properly viewed, this was not a breakdown of communication requiring appointment of new counsel, only an unwillingness on Taylor's part to communicate with appointed counsel. See United States v. Anderson, 570 F.3d 1025, 1032 (8th Cir. 2009), and cases cited. The district court did not abuse its discretion by declining to grant Taylor's requests for new counsel. See Exson, 328 F.3d at 460-61.

Taylor further argues that his waiver of counsel was involuntary because the district court refused to grant him substitute counsel. A defendant's right to counsel includes the right to conduct his own defense. Faretta v. California, 422 U.S. 806, 835 (1975). But the court must "assure itself that the waiver of the right to appointed counsel is knowing and voluntary." United States v. Mentzos, 462 F.3d 830, 838 (8th Cir. 2006), cert. denied, 549 U.S. 1359 (2007). A waiver is involuntary if the defendant is offered the "Hobson's choice" of proceeding to trial with unprepared

counsel or no counsel at all.  See Gilbert v. Lockhart, 930 F.2d 1356, 1360 (8th Cir. 1991).  "However, if defendant's counsel is competent and defendant cannot establish good cause entitling him to appointment of new counsel, his waiver will be deemed voluntary."  United States v. Taylor, 183 F.3d 1199, 1203 (10th Cir.), cert. denied, 528 U.S. 904 (1999).  "[A] persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel.  In such an instance, the trial court may proceed to trial with the defendant representing himself."  United States v. Moore, 706 F.2d 538, 540 (5th Cir.), cert. denied, 464 U.S. 859 (1983); accord Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir. 1988).  The district court properly cautioned Taylor as to the dangers of self-representation.  In these circumstances, his waiver of counsel was valid.[3]

The judgment of the district court is affirmed.  We deny Taylor's *pro se* motion claiming ineffective assistance of appellate counsel.

———————————————————————

[3]Taylor also rejected Poindexter's services as standby counsel at trial and unwisely called Poindexter as a witness, attempting to show that Poindexter had conspired with the prosecution in gathering incriminating DNA evidence.  But this was Taylor's choice.  "There is no constitutional right to hybrid representation."  United States v. Einfeldt, 138 F.3d 373, 378 (8th Cir.), cert. denied, 517 U.S. 1174 (1996); see generally McKaskle v. Wiggins, 465 U.S. 168 (1984).