IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38652

STATE OF IDAHO,                                )        2013 Unpublished Opinion No. 535
                                               )
    Plaintiff-Respondent,              )        Filed:  June 13, 2013
                                               )
v.                                             )        Stephen W. Kenyon, Clerk
                                               )
RICHARD DAVID POKORNEY,                        )        THIS IS AN UNPUBLISHED
                                               )        OPINION AND SHALL NOT
    Defendant-Appellant.               )        BE CITED AS AUTHORITY
                                               )

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction for two counts of lewd conduct with a minor under sixteen, affirmed.

Greg S. Silvey, Star, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.
_____

GUTIERREZ, Chief Judge

    Richard David Pokorney appeals from his judgment of conviction for two counts of lewd conduct with a minor under sixteen.  For the reasons set forth below, we affirm.

# I.

## FACTS AND PROCEDURE

    Pokorney was charged with seven counts of lewd conduct with a minor under sixteen, Idaho Code § 18-1508, stemming from allegations concerning four of his five sons.  He was appointed a public defender (Counsel), but was dissatisfied with Counsel's performance.  After being denied substitute counsel Pokorney discharged Counsel in the middle of trial and proceeded pro se.  Pokorney was convicted of five counts of lewd conduct involving three of his sons, but the convictions were overturned by this Court on appeal due to the improper admission of prior acts evidence.  *State v. Pokorney*, 149 Idaho 459, 235 P.3d 409 (Ct. App. 2010).  On retrial, the State charged Pokorney with five counts of lewd conduct involving three of his sons

1

(R.P., W.P. and J.G.). The district court again appointed Counsel to represent Pokorney. Pokorney repeatedly requested substitute counsel from outside the public defender's office, but the district court refused, and Pokorney again chose to proceed to trial pro se. The jury found Pokorney guilty of two counts of lewd conduct (Count II in regard to R.P. and Count V in regard to W.P.), but could not reach a verdict on the remaining charges, which were dismissed without prejudice. The district court entered a judgment of conviction, and Pokorney now appeals, contending the district court erred in denying his motion for substitute counsel and in denying his request to recall certain witnesses for further cross-examination and contending there was insufficient evidence to support his convictions.

## II.

## ANALYSIS

### A. Substitute Counsel

Pokorney argues the district court abused its direction by refusing to appoint him substitute counsel or, in the alternative, failing to hold a proper hearing in response to his request for substitute counsel. The Sixth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution guarantee the right to counsel. However, the right to counsel does not necessarily mean a right to the attorney of one's choice. *State v. Lippert*, 152 Idaho 884, 887, 276 P.3d 756, 759 (Ct. App. 2012); *State v. Clark*, 115 Idaho 1056, 1058, 772 P.2d 263, 265 (Ct. App. 1989). Nor does it entitle a defendant to a "meaningful relationship" with his or her attorney. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). It does entitle a criminal defendant to reasonably competent counsel, *State v. McCabe*, 101 Idaho 727, 728, 620 P.2d 300, 301 (1980); *State v. Carman*, 114 Idaho 791, 793, 760 P.2d 1207, 1209 (Ct. App. 1988), but mere lack of confidence in otherwise competent counsel is not necessarily grounds for substitute counsel in the absence of extraordinary circumstances. *McCabe*, 101 Idaho at 729, 620 P.2d at 302; *Lippert*, 152 Idaho at 887, 276 P.3d at 759; *State v. Peck*, 130 Idaho 711, 713, 946 P.2d 1351, 1353 (Ct. App. 1997).

If "good cause" is shown, the defendant is constitutionally entitled to the appointment of new counsel. *Lippert*, 152 Idaho at 887, 276 P.3d at 759. Good cause includes an actual conflict of interest; a complete, irrevocable breakdown of communication; or an irreconcilable conflict that leads to an apparently unjust verdict. *Id*. Factors to be used in examining constitutional implications of a total breakdown in communication include: (1) whether the defendant's

2

motion for new counsel was timely; (2) whether the trial court adequately inquired into the defendant's reasons for making the motion; (3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to the communication breakdown. *United States v. Lott*, 310 F.3d 1231, 1250 (10th Cir. 2002); *Lippert*, 152 Idaho at 887, 276 P.3d at 759. A defendant may not manufacture good cause by abusive or uncooperative behavior. *Lippert*, 152 Idaho at 887, 276 P.3d at 759.

Absent a constitutional entitlement, the issue is one of discretion. I.C. § 19-856; *Clark*, 115 Idaho at 1058, 772 P.2d at 265. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In cases of both the constitutional and discretionary grant of substitute counsel, the trial court must afford the defendant a full and fair opportunity to present the facts and reasons in support of a motion for substitution of counsel after having been made aware of the problems involved. *State v. Clayton*, 100 Idaho 896, 898, 606 P.2d 1000, 1002 (1980); *Lippert*, 152 Idaho at 887, 276 P.3d at 759. It must conduct a meaningful inquiry to determine whether a defendant possesses good cause for his or her request for substitute counsel. *Lippert*, 152 Idaho at 887, 276 P.3d at 759. Specifically, the district court must make some reasonable, nonsuggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her Sixth Amendment right would be violated but for substitution. *Lippert*, 152 Idaho at 887, 276 P.3d at 759. Even when the trial court suspects the defendant's requests are disingenuous and designed solely to manipulate the judicial process and to delay the trial, perfunctory questioning is not sufficient. *Id*.

Pokorney's involvement with Counsel began prior to his first trial, during which time Pokorney repeatedly requested appointment of substitute counsel and the district court denied the requests. He subsequently discharged Counsel in the middle of trial and proceeded pro se. After

Pokorney's judgment of conviction was overturned on his first appeal to this Court and the case was remanded, he was again appointed the same attorney. At a pre-trial hearing on August 12, 2010, Pokorney moved that substitute counsel be appointed, specifically requesting an attorney from outside the public defender's office on the basis of "ineffective counsel, obstruction, denial of evidence, willful sabotage, on and on [sic]." The district court instructed him to write a letter outlining his concerns and said that a hearing would be held on the motion.

A hearing was held on Pokorney's request for substitute counsel on August 20. The district court indicated it had not received Pokorney's letter and Pokorney stated he had it with him and was not aware he was supposed to deliver it prior to the hearing. When the district court asked to see the letter, Pokorney indicated he withdrew his motion for substitute counsel and wanted to assert his right to proceed pro se. Upon further questioning by the district court it was clarified that Pokorney continued to stand by his request for substitute counsel, and he asserted he had a conflict with Counsel. When asked, Counsel stated he did not have a conflict that would inhibit his ability to represent Pokorney and reaffirmed his past indications that he had conducted discovery, investigated the case, had the assistance of an investigator on the case, and was prepared to meet with Pokorney on a regular basis to prepare for trial.

Upon questioning by the court, Pokorney described a particular threat he believed Counsel made:

> He told me that during the course of the [first] trial while in a side room, that if I continued to question . . . one of the witnesses, that you had told him that he would be reassigned to be the attorney and that my right to represent myself would be taken away, and that he would, quote, make sure that I spent the rest of my life in prison.

Counsel denied making such a statement. Pokorney also complained that, during their first meeting eight months before the first trial and before any investigation commenced, Counsel "threatened" him by asking about the proper clothing size for Pokorney to wear at trial, which Pokorney interpreted as Counsel's indication that the case was "definitely going to trial" when most cases do not. Counsel denied it was his intent to "scare" or "threaten" Pokorney, but rather to prepare for trial. Pokorney indicated he had many additional conflicts with Counsel. At that point, the district court suspended the hearing and ordered a competency evaluation based on "grave concerns" about Pokorney's competency to proceed.

4

The next hearing was held on September 24, during which the district court noted the psychological evaluator determined Pokorney was competent to proceed. The court then noted it had received two detailed documents from Pokorney outlining his complaints regarding Counsel, the first a letter to Counsel dated August 17, 2010, and the second a document entitled "Request for Counsel," filed with the court on September 24, 2010. The gist of these documents was that Pokorney believed Counsel acted ineffectively in regard to his first trial, to a degree that Pokorney accused him of "colluding" with the prosecution. When asked whether he had any additional complaints regarding Counsel, Pokorney said no. Counsel denied the allegations in the letters, and the court made the following ruling:

[The Court]: Again, based upon the representations that were made to the court earlier, and that was just shortly before the court requested that there be a mental health evaluation . . . [and] based upon the letters that I have reviewed, and keeping in mind it is the province and the duty of the court to review the allegations, I cannot find at this time that [Counsel's] representation of Mr. Pokorney in the prior proceedings was deficient or was ineffective or was incompetent. In fact, to the contrary.

I will also find that [Counsel] does not have a conflict in representing Mr. Pokorney in future proceedings. It is clear from these letters that Mr. Pokorney has a conflict with [Counsel] representing him.

However, that's not the standard. The standard is, is there a conflict that would prevent counsel from representing defendant, or have there been statements or actions by defense counsel that rise to the level that a defendant cannot, based upon those specific actions or comments--cannot have a level of confidence, a level of--well, the level of confidence in the defense counsel?

By that, I mean, though I have reviewed all of these statements you've made, there is nothing in those that show to this court--

[Pokorney]: But--

[The Court]: Just let me finish. I'm making my ruling, Mr. Pokorney. That [Counsel] either through statements made to you or actions taken by him, demonstrate any bias or prejudice against you, the crime that brings you before the court.

So the option is this: If you would like to have an attorney represent you, if it's going to be an appointed attorney, it would be [Counsel].

[Pokorney]: And that's not acceptable.

[The Court]: Okay. Then if you would like to hire your own attorney, you can. If you cannot afford to hire an attorney, then I will go through a series of questions with you about representing yourself.

After the district court informed Pokorney of the various disadvantages of representing himself, the following exchange occurred:

[Pokorney]: What I don't understand is why you don't appoint conflict assistance.

[The Court]: Sometimes I don't articulate very well, Mr. Pokorney, but I found there is no basis for conflict counsel, based upon the totality--

[Pokorney]: I just--we didn't have a hearing. You read my letter but we never talked about it.

[The Court]: I asked you if you had any additional matters that you wished to bring to the court's attention.

[Pokorney]: I know, but we never talked about the matters that I did bring to your attention that were written in the letter. We were supposed to discuss why [Counsel] didn't bring up the fact that a felony--

[The Court]: Sir, I read those letters. And taking every bit of it as true, I cannot find there is a basis to remove [Counsel] as your appointed counsel.

. . . .

That's my ruling. Now, I am not going to have any further discussion with you. I made my ruling, and if you chose to challenge that ruling, you are certainly welcome to do so with a higher court.

Pokorney continued to renew his request for conflict counsel at various stages of trial, with the court continuing to reaffirm its ruling above.

Initially, we note the district court's decision denying Pokorney's motion does not clearly and accurately set forth the proper standard. However, it is well-settled that where a ruling in a criminal case is correct, though based upon an incorrect reason (or in this case an incomplete reason), it still may be sustained upon the proper legal theory. *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984). First, it is evident from the record that Pokorney was afforded a full and fair opportunity to present the facts and reasons in support of a motion for substitution of counsel. The district court held a second hearing on the issue after the first was continued upon the district court's belief that Pokorney's competence needed to be assessed. Pokorney (repeatedly) expressed his dissatisfaction with Counsel's representation to the district court when given the opportunity to speak and filed with the court his letter to Counsel and a document entitled "Request for Counsel," both of which set forth in great detail the basis for Pokorney's dissatisfaction with Counsel, and which the court indicated it reviewed. At the

hearing, the district court took pains to ascertain Pokorney's true desire when it appeared Pokorney was withdrawing his motion for substitute counsel in order to proceed pro se, and then when the court was satisfied Pokorney was still requesting substitute counsel, asked Pokorney for examples of the alleged "threats" made by Counsel. The district court also asked Counsel whether a conflict existed, as well as whether the "threats" asserted by Pokorney were actually made. Prior to making its oral ruling, the district court asked Pokorney whether he had any additional complaints regarding Counsel, and Pokorney said no. A review of our case law convinces us this comprised a sufficient inquiry into the reasons for Pokorney's motion. For example, in *State v. Gamble*, 146 Idaho 331, 336, 193 P.3d 878, 883 (Ct. App. 2008), the defendant argued the lower court did not make the requisite inquiry into his request for substitute counsel. We dispensed with this claim:

> [T]he record shows that on the morning of trial, counsel for Gamble informed the court that Gamble was not happy with his representation, and the court gave him the opportunity to express his concerns, which he did. The court then asked Gamble's counsel about the concerns that had been raised, and following his comments, concluded that counsel was not unprepared for trial. This exchange provided Gamble with a "full and fair opportunity" to explain his reasons for wishing to discharge his public defender . . . .

*Id*. Here, Pokorney was given as much, if not more, of an opportunity to explain his reasons for requesting substitute counsel. *Accord State v. DeWitt*, 153 Idaho 658, 673, 289 P.3d 60, 65 (Ct. App. 2012) (holding a sufficient inquiry occurred where the court asked the defendant his reasons for requesting new counsel). By contrast, in cases where we found the defendant did not receive the requisite hearing, the defendants were given little to no opportunity to express their grievances, and the court did not inquire as to the grievances they did express. *See State v. Nath*, 137 Idaho 712, 715, 52 P.3d 857, 860 (2002) (court conducted an incomplete assessment of Nath's motion for substitution of counsel and did not allow Nath to speak on the issue); *State v. Lippert*, 145 Idaho 586, 592, 181 P.3d 512, 518 (Ct. App. 2007) (court did not inquire into reasons after Lippert made request for substitute counsel, instead advising that Lippert "get together" with counsel to work it out); *Peck*, 130 Idaho at 713-14, 946 P.2d at 1353-54 (court threatened to have Peck removed from courtroom when Peck expressed dissatisfaction with counsel, said Peck's dissatisfaction was "irrelevant" and Peck did not have the authority to "fire" counsel, and ultimately denied the motion for substitute counsel without basis). These cases are

distinguishable from the situation here. Not only was Pokorney given the opportunity to submit a detailed, written explanation of his reasons as well as verbally present his assertions at the hearings, but the court specifically inquired into these reasons, asking Counsel his side of the story and ultimately ruling specifically on these assertions in denying the motion.

Next, we turn to Pokorney's contention that the district court erred in denying the motion given the state of his relationship with Counsel. His primary argument appears to be that, because the district court told Pokorney that even "taking every bit of it as true, I cannot find there is a basis to remove [Counsel] as your appointed counsel," the district court erred because if the court did, in fact, take the allegations contained in the two documents as true, substitution of counsel would be required. If the court's statement is taken literally, Pokorney's assertion is, of course, correct given that Pokorney accused Counsel of, among other things, lying to him, threatening him, and colluding with the prosecutor. The record convinces us, however, that examined in context, this statement by the district court was not the crux of its ruling, but rather a misstatement made after (and distinct from) the court's actual ruling. When the statement was made, the district court had already made its ruling on the motion on the bases that it found no conflict of interest preventing Counsel from continuing representation and Counsel had not rendered incompetent performance. That the court later misspoke, after it had moved on to a different issue (advising Pokorney of the disadvantages of continuing pro se), in response to Pokorney's continued questions regarding the appointment of substitute counsel, is of little relevance to our inquiry on appeal.

We turn to the substantive bases for denial of the motion. As mentioned previously, the district court explicitly found there was no conflict or ineffective assistance warranting the appointment of substitute counsel. On appeal, Pokorney contends good cause did exist because there was a conflict of interest,[1] Counsel acted incompetently, and there was a complete breakdown in communication between Pokorney and Counsel, the latter of which was not specifically raised below, or addressed by the district court. As to the two bases the district court did specifically address--conflict and competency--Pokorney argues the findings were erroneous because the district court applied the "wrong legal standard." This argument is unavailing

---

[1] Although case law indicates a conflict between the parties may exist outside an actual conflict of interest, Pokorney's arguments on appeal are restricted to the district court's finding that there was no conflict of interest and we restrict our discussion thusly.

because, although the district court's oral ruling is somewhat unclear, it undertook the requisite inquiry--whether good cause required substitution of counsel. After reviewing Pokorney's letters, discussing his concerns at a hearing, and questioning Counsel as to Pokorney's accusations (not to mention having personally observed Counsel's performance), the district court determined there was no conflict and Counsel had not acted incompetently. On this basis, it decided substitution of counsel was not required. On appeal, Pokorney does not assert any reasons why such findings were erroneous.

A somewhat more difficult issue is Pokorney's argument that there existed a complete breakdown in communication with Counsel such that he was entitled to substitute counsel. As indicated above, the district court did not specifically address this issue (nor was it specifically argued below); however, assuming it is properly before this Court, the record is sufficient for this Court to resolve the issue.

On appeal, Pokorney argues his decision to twice discharge Counsel is evidence of a complete breakdown because "there can be no more complete or irrevocable breakdown of communication than actually not having an attorney-client relationship anymore." The issue is not so clear-cut, however. Taken to its logical conclusion, such an interpretation would allow defendants to force a finding of good cause for the substitution of counsel simply by discharging counsel. Rather, as set forth above, whether a complete communication breakdown has occurred and whether such a breakdown carried constitutional implications is a fact specific inquiry and includes consideration of four factors: (1) whether the substitution motion was timely; (2) whether there was adequate inquiry by the district court; (3) whether a lack of communication precluded an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to the communication breakdown. *Lippert,* 152 Idaho at 887, 276 P.3d at 759. Here, the timeliness of Pokorney's motion is not an issue since he moved for substitute counsel almost immediately upon being appointed Counsel for the second time. In addition, we resolved above that the district court conducted a sufficient inquiry into the issue. However, even assuming there was a complete breakdown in communication between the parties, and it precluded an adequate defense (since Pokorney proceeded to trial pro se), the fourth consideration is especially problematic for Pokorney and, as we discuss below, precludes us from finding he had a constitutional entitlement to substitute counsel in this instance.

9

The circumstances presented here--where the defendant refuses to communicate with counsel and/or allow counsel to represent him, but counsel is not the source of the breakdown in communication and has not been found to have rendered incompetent representation--presents certain complexities. On one hand, without a certain level of cooperation between a defendant and counsel, an adequate defense is virtually impossible. However, it is also well-settled that a defendant may not manufacture good cause by abusive or uncooperative behavior. *Id.* We have no cases directly on point, and other jurisdictions have taken somewhat divergent approaches to the issue.

The Ninth Circuit Court of Appeals has led the way in taking a more deferential approach to defendants' requests for substitute counsel in cases where the request is based solely on the defendant's inability to get along with counsel (*i.e.*, there is no evidence of ineffectiveness or inappropriate behavior by counsel). *See Stenson v. Lambert*, 504 F.3d 873, 887 (9th Cir. 2007) (noting the court has held on numerous occasions that a complete breakdown of communication may occur even where counsel is providing competent representation, albeit only in "extreme" cases). The basis of the Ninth Circuit's stance in this regard is *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970), where the defendant appealed his conviction alleging he was not adequately represented by counsel at trial. Brown moved four times for substitute counsel after his public defender was appointed because a dispute had arisen between them. The trial court denied each motion and made no inquiry into Brown's alleged conflict with his attorney. The result was that Brown was "forced into a trial with the assistance of a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not, in any manner whatsoever, communicate." *Id.* at 1169. On appeal, the Ninth Circuit noted it did not fault defense counsel because it was understandable that counsel performed his duty "under the gravest handicap" since Brown would not communicate with counsel. *Id.* at 1170. However, in finding that the trial court did not properly inquire into the dispute, the court determined, "[T]o compel one charged with [a] grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever." *Id.*

Similar circumstances entitling a defendant to substitute counsel were found in *United States v. Nguyen*, 262 F.3d 998, 1000 (9th Cir. 2001), where a non-English speaking defendant moved to substitute counsel after he stopped communicating with his appointed attorney at trial

10

because of his belief counsel was not representing him properly and was "rude" to him. After concluding there was no indication the defendant was not being competently represented, the district court denied the motion. The Ninth Circuit found, among other things, it was error for the district court to focus exclusively on the attorney's competence without considering the relationship between the defendant and counsel: "Even if present counsel is competent, a serious breakdown in communications can result in an inadequate defense." *Id*. at 1003. The district court's refusal to consider the relationship was significant in *Nguyen* because, as the Ninth Circuit noted, by the time trial began, Nguyen was "left to fend for himself;" he could not confer with his attorney about trial strategy or evidence, or have his attorney explain the proceedings. *Id*. at 1004. The Ninth Circuit determined this result violated his Sixth Amendment right to counsel. *Nguyen*, 262 F.3d at 1004. *See also Lott*, 310 F.3d at 1250 (holding that, even where counsel is competent, "[a] defendant who cannot communicate with his attorney cannot assist his attorney with preparation of his case, including suggesting potential witnesses to call and trial strategies to pursue, discussing whether the defendant himself should testify, and helping formulate other bread-and-butter decisions that can constitute the core of a successful defense" and may require substitute counsel be appointed); *United States v. Moore*, 159 F.3d 1154, 1159-60 (9th Cir. 1998) (holding, with no discussion of counsel's competency or whether the defendant was to blame for the disintegration of their relationship, that where there was no communication between the parties, it rose to the level of breakdown described in *Brown* and required substitute counsel).

Other courts have not been as accommodating where, although it is apparent there was a "complete breakdown in communication" between the defendant and counsel, the blame rested with the defendant. In *United States v. Taylor*, 652 F.3d 905 (8th Cir. 2011), the defendant repeatedly expressed his dissatisfaction with counsel, arguing, among other things, that counsel was acting ineffectively, "making him insane," and not working in his best interest. *Id*. at 907. He also filed a criminal complaint against counsel. After repeated accusations against counsel and several instances of inappropriate behavior in the courtroom by the defendant, the defendant eventually proceeded to trial pro se. On appeal, the Eighth Circuit noted it was "obvious there was 'a complete breakdown in communication' between attorney and client." *Id*. at 909. However, the court determined the district court did not abuse its discretion in denying substitute counsel, given that it was the defendant who refused all contact with counsel and had employed

11

every tactic he could think of to "coerce the court into appointing a new counsel with whom, the court reasonably concluded, [the defendant] was unlikely to have any better relations." *Id*. Under such circumstances, the court noted, the Eighth Circuit and other courts "have sensibly declined" to find an abuse of discretion. *Id*. The defendant "was not entitled to new counsel if his refusal to cooperate with [counsel] was simply a 'stonewalling effort to select counsel of his own choice.'" *Id*. (quoting *United States v. Horton*, 845 F.2d 1414, 1418 (7th Cir. 1988)). "Properly viewed," the court concluded, "this was not a breakdown of communication requiring appointment of new counsel, only an *unwillingness* on [the defendant's] part to communicate with appointed counsel." *Id*. (emphasis added).

Similarly, in *United States v. Simpson*, 645 F.3d 300, 308 (5th Cir. 2011), even assuming there existed a complete breakdown in communication between the defendant and counsel, the Fifth Circuit found it did not warrant reversal of the defendant's conviction where the breakdown in communication was attributable to "the defendant's intransigence, and not to the neglect of defense counsel or the trial court." Interestingly, like in this case, there were questions as to the defendant's competency, leading the court to acknowledge the breakdown in attorney-client communication was "intertwined" with the issue of the defendant's competency. *Id*. However, the court concluded that because the defendant was adjudged competent, it was reasonable to conclude he was at least capable of cooperating with his lawyers, "and was only engaging in a ruse, at least in part, to 'demand a different appointed lawyer.'" *Id*. *Cf. Lott*, 310 F.3d at 1249-50 (finding a complete breakdown in communication warranting substitution of counsel where the defendant's repeated efforts failed to establish contact with his attorney); *United States v. Mullen*, 32 F.3d 891, 896-97 (4th Cir. 1994) (finding there was a complete breakdown in communication warranting substitution of counsel where the *attorney* had no communication with the defendant in the month preceding trial).

We find the reasoning of the latter two cases--that a defendant cannot, by his own intransigence, manufacture a communications breakdown requiring appointment of substitute counsel--to be more persuasive. Here, Pokorney refused to cooperate with Counsel, eventually discharging him, for what can essentially be boiled down to an assertion that Counsel was acting incompetently; however, the district court specifically found Counsel had not acted incompetently. Thus, it was Pokorney, and not Counsel, who created the communication breakdown by refusing to work with Counsel on an unreasonable basis (given the district court's

12

finding). To find substitution of counsel is constitutionally required under such circumstances would open the floodgates for defendants, unhappy with appointed counsel, to simply refuse to communicate with counsel. The district court did not err in refusing to appoint substitute counsel in this instance.

**B.     Sufficiency of the Evidence**

Pokorney contends the evidence at trial was insufficient to support both convictions for lewd conduct with a minor under sixteen. Specifically, he contends there was insufficient evidence to support a finding that he engaged in touching with the requisite intent. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Lewd conduct consists of any lewd or lascivious act upon the body of a child "done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires" of the defendant, the victim, or a third party. I.C. § 18-1508. Where specific intent is an essential element of the crime, as in this case, direct evidence of such intent is not required. *State v. Marsh*, 141 Idaho 862, 867, 119 P.3d 637, 642 (Ct. App. 2004); *State v. Norton*, 134 Idaho 875, 880, 11 P.3d 494, 499 (Ct. App. 2000). Instead, such intent may be proven through the use of circumstantial evidence, such as evidence of the defendant's acts, conduct, and surrounding circumstances. *Marsh*, 141 Idaho at 867, 119 P.3d at 642; *Norton*, 134 Idaho at 880, 11 P.3d at 499.

In regard to Count II, the information charged Pokorney with having genital-to-genital contact with R.P. At trial, R.P. testified Pokorney rubbed his genitals on R.P.'s genitals while R.P. (six or seven years old at the time) was sleeping in Pokorney and his wife's bed. On appeal,

Pokorney contends there was insufficient evidence to prove he had the requisite intent because there was no evidence presented that he was "awake or conscious while allegedly" committing the act; thus, he contends, "[T]here is no evidence that the act was willful and/or that it was done with the intent to appeal to anyone's sexual desire." The State was not required to present direct evidence that Pokorney was conscious of his act. Rather, it has been held on numerous occasions that a fact-finder may infer from the sexual acts the requisite intent. *See State v. Parkinson*, 128 Idaho 29, 38, 909 P.2d 647, 656 (Ct. App. 1996) (concluding a rational jury could infer that the defendant had the requisite intent from the victim's testimony that the defendant came to her bed and fondled her on three different occasions); *State v. Matthews*, 124 Idaho 806, 814, 864 P.2d 644, 652 (Ct. App. 1993) (concluding a rational jury could infer that the defendant had the requisite intent from testimony from three children that the defendant touched them inappropriately while they were playing); *State v. Bronson*, 112 Idaho 367, 369, 732 P.2d 336, 338 (Ct. App. 1987) (holding there was sufficient evidence concerning the requisite intent where the defendant admitted the acts and the victim disputed the defendant's characterization of the touching as "teaching"). Based on R.P.'s testimony of the act, the jury in this case was within its prerogative to conclude Pokorney acted willfully with the requisite intent.

In regard to Count V, the information charged Pokorney with having manual-to-genital contact with W.P. W.P. testified at trial that Pokorney fondled W.P.'s genitals with his hands and W.P. believed it constituted sexual contact. Pokorney contends that because W.P. answered "no" when Pokorney asked W.P. at trial whether Pokorney "was using you for sex" and if Pokorney "was getting off on touching" W.P., the requisite intent was not proven. Pokorney's contention is, again, unavailing. W.P.'s characterization of Pokorney's intent is not controlling (and even if it was, his testimony was contradictory), and as we indicated above, the jury is entitled to infer the requisite intent from the defendant's acts. There was sufficient evidence for the jury to infer Pokorney acted with the requisite intent as to this count.

## C. Recall of Witnesses

Finally, Pokorney contends the district court erred in refusing to allow him to recall several witnesses during the State's case-in-chief in order to impeach them with their prior testimony. Initially, we note that the district court only precluded Pokorney from recalling R.P.

(as can be seen from the record excerpted below), and thus, we confine our discussion to that ruling.

On the first day of trial, during Pokorney's cross-examination of R.P., the following exchange occurred:

[Pokorney]: Your Honor, I want to recall him tomorrow, after--I have a bunch of stuff--

[The Court]: Well, at this point, we'll take it up accordingly.

You can be excused--did you have any other questions at this point?

[Pokorney]: Will I get to talk to him tomorrow?

[The Court]: I'll make a determination whether or not you can be excused. If you wish to call him in your case-in-chief tomorrow, he'll be allowed to testify.

[Pokorney]: Okay. I'll do that. Okay, son.

The State then conducted redirect examination of R.P. Later on the first day of trial, after the State's redirect of W.P., the court asked Pokorney whether he wished to recall W.P. the next day, to which Pokorney replied in the affirmative. The first day of trial ended during Pokorney's cross-examination of J.G. After the jury was excused, Pokorney indicated to the court he would be recalling some of the witnesses who had already testified and asking numerous questions regarding contradictions with previous testimony and statements. The court indicated there was "a time and place to impeach a witness, and that typically is done when they are called by the State." The court indicated it would "wait and see" what questions Pokorney would ask and proceed from there.

When trial resumed the next day, the court addressed Pokorney before the jury was present and the following exchange occurred:

[The Court]: You had indicated you're going to be recalling some witnesses and going over with them, as part of that testimony, what they have testified to before in earlier court proceedings.

Rule 43(b)(5) of our Rules of Civil Procedure sets forth that "A witness, once examined, cannot be reexamined on the same matter without leave of the court."

And so, obviously, if . . . you intend to impeach [your three sons] about their earlier testimony, that, frankly, was covered or you had that opportunity in the State's case-in-chief to cross-examine them about that. I'll wait to see what you intend to call them on.

15

|  |  |
|---|---|
|  | The one witness that I'm concerned about in particular is the youngest child that testified. The 15-year-old [W.P.] and [J.G.], the 27-year-old, I may give you some latitude on that. But were you going to recall--what's the youngest one that testified? |
| [Pokorney]: | [R.P.]. |
| [The Court]: | . . . Were you going to recall him and ask him questions about his earlier testimony? |
| [Pokorney]: | I was. |
| [The Court]: | Why didn't you go through that when he was on the witness stand and that was being covered earlier when he testified as to the inappropriate touching? |
| [Pokorney]: | Well, because I didn't have the material with me. |
| [The Court]: | Well, that's your problem. I'm not going to allow him to be retraumatized again. |
| [Pokorney]: | Okay. Well, he's my witness too. I'll just do it when it's my witness. |
| [The Court]: | No . . . if the subject matter about the touching was brought out on direct examination and you had an opportunity to cross-examine him about that, that's when you can cross-examine him about prior inconsistent statements. |
| [Pokorney]: | Right. I understand that. |
| [The Court]: | That's fair game. |
| [Pokorney]: | I don't want to cross-examine him. I'm going to call him as my witness. |
| [The Court]: | And what are you going to ask him? |
| [Pokorney]: | A whole bunch of stuff. |
| [The Court]: | Well, you're going to lay it out for me now. What are you going to ask him about? |
| [Pokorney]: | Wait. Rule 607 says . . . I can attack the credibility of any witness, right? |
| [The Court]: | You do it on cross-examination, when they've been called the first time. |
| [Pokorney]: | Right, but that's the State's witness. |
| [The Court]: | No. |
| [Pokorney]: | What about my witness? |
| [The Court]: | If you're going to recall him, I would like to hear from you . . . what it is that you're going to ask him on reexamination? What is it you intend to ask him about? |
| [Pokorney]: | I'm going to ask him about his statements that he had his clothes off, because in the earlier-- |
| [The Court]: | You had an opportunity to do that on cross-examination. |
| [Pokorney]: | So-- |
| [The Court]: | That was brought up. |
| [Pokorney]: | So you're saying that--before I even call my witness, you're telling me what I can and cannot talk about? |
| [The Court]: | I'm telling you that you can ask him about-- |

16

| [Pokorney]: | Anything. He's my witness. |
|---|---|
| [The Court]: | No, you cannot. You cannot bring out prior inconsistent statements. |
| [Pokorney]: | Because? |
| [The Court]: | Because you had the opportunity to do that-- |
| [Pokorney]: | I haven't had-- |
| [The Court]: | --when he was on--yes, you have. And I'm not going to argue with you anymore. . . . I'm going to order you at this point in time--before he's even recalled to the witness stand, you're going to outline to me what it is that you're going to ask him. And if it's about prior inconsistent statements on that youngest child, who has been traumatized twice already, I am not going to give you the right to do that by recalling him. You had the opportunity to do that when he was on the witness stand in the first place. And Rule 43(b)(4) clearly points that out. |
| | Now, with the 15-year-old and the older one, I'll give you that latitude because, frankly, you're representing yourself. And, by the way, you're doing a very marginal job, at best, at doing that. |

On appeal, Pokorney contends the district court erred in refusing to allow him to recall R.P. because it relied on a civil rule in doing so and his Sixth Amendment rights to confront his accusers and to compulsory process, *i.e.*, to present a complete defense, were violated by the ruling. Of course, we agree that a civil rule of procedure is an improper basis for limiting a defendant's ability to recall a witness in a criminal trial. However, as we indicated above, where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *Pierce*, 107 Idaho at 102, 685 P.2d at 843. The Sixth Amendment guarantees a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor." *Accord* IDAHO CONST. Art. I, § 13. Compulsory process is the right to present a defense--specifically, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *State v. Dalrymple*, 144 Idaho 628, 634-35, 167 P.3d 765, 771-72 (2007). The right of the accused to present witnesses in his own defense is fundamental, but is not without limitation. *Taylor v. Illinois*, 484 U.S. 400, 408-10 (1988); *Dalrymple*, 144 Idaho at 635, 167 P.3d at 772. In addition, although a criminal defendant's constitutional right of confrontation includes the opportunity to mount a vigorous attack upon the credibility of witnesses against him, *see generally Davis v. Alaska*, 415 U.S. 308 (1974), the right to confront adverse witnesses is not absolute. *State v. Downing*, 128 Idaho 149, 152, 911 P.2d 145, 148 (Ct.

App. 1996). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). *See also Downing*, 128 Idaho at 152-53, 911 P.2d at 148-49. Trial courts retain wide latitude to impose limits on cross-examination that is harassing, confusing, repetitive, or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *State v. Araiza*, 124 Idaho 82, 91, 856 P.2d 872, 881 (1993); *Downing*, 128 Idaho at 153, 911 P.2d at 149.

Here, the crux of the district court's ruling in disallowing the recall of R.P. was that Pokorney had his opportunity to confront R.P. with his alleged inconsistent statements during cross-examination and, having not done so, was not allowed to recall R.P. to the stand because of the court's fear that R.P. would be "retraumatized." Given that Pokorney was, in fact, given the opportunity to cross-examine R.P. with his inconsistent statements, he was afforded his constitutional right to confront witnesses and present his defense. That he did not take advantage of this opportunity (for whatever reason) and the district court then acted within its considerable discretion to limit further cross-examination in order to protect R.P., does not rise to the level of a constitutional violation of Pokorney's Sixth Amendment rights.

## III.

## CONCLUSION

The district court adequately inquired into Pokorney's request for substitute counsel and did not err in denying this request. In addition, there was sufficient evidence to sustain Pokorney's convictions for two counts of lewd conduct with a minor under sixteen and the district court's refusal to allow Pokorney to recall R.P. as a witness did not rise to the level of a constitutional violation. Pokorney's judgment of conviction for two counts of lewd conduct with a minor is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

18