88 P.3d 690

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steven K. HOPPE, Defendant–Appellant.**

No. 30302.

Supreme Court of Idaho,
Boise, March 2004 Term.

March 25, 2003.

Teresa A. Hampton, Boise, for appellant. Teresa A. Hampton argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

EISMANN, Justice.

This is an appeal from the district court's refusal to permit the defendant to act as his own attorney during his trial, at which he was found guilty of three felonies. Because such refusal violated the defendant's constitutional right to self-representation, we vacate the judgment and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

On February 6, 2001, the defendant, Steven Hoppe, appeared in district court with his attorney, Stewart Morris, to be arraigned on the felony charges of possession of methamphetamine, delivery of methamphetamine, and trafficking in methamphetamine by manufacturing it. Hoppe entered a plea of "not guilty," and the case was set for trial to commence on May 30, 2001.

On March 28, 2001, Morris filed a motion seeking permission to withdraw as counsel for Hoppe on the ground that he had a conflict of interest because one of Morris' former clients may be called by the State to testify against Hoppe. The district court heard and granted that motion on April 10, 2001. At the hearing, Hoppe stated that he intended to retain another attorney. The district court set the matter for further review on May 1, 2001.

On May 1, Hoppe appeared without counsel and informed the court that he had as yet been unable to hire private counsel. The district court gave him another week and set the matter for further review on May 8, 2001.

On May 8, Hoppe again appeared without counsel, but stated that he had spoken with Morris who would again represent him. The State also informed the court that one of its witnesses would be out of town from May 20 through June 1, and so the court vacated the trial, but did not vacate the previously-scheduled pretrial conference set for May 22, 2001.

On May 22, Hoppe appeared in court with Morris. The State informed the court that the parties were attempting to resolve the case. If they reached a plea agreement, Morris would formally appear as Hoppe's counsel of record, but if the case were to be tried he would not. At the State's request, the district court continued the matter until June 12, 2001.

On June 12, Hoppe appeared in court with Morris, who stated that the case was not resolved, that he was not appearing as Hoppe's counsel of record, and that Klaus Wiebe would be representing Hoppe. The court continued the matter until June 19, 2001.

On June 19, Hoppe appeared with Wiebe, who informed the court that he was not appearing as counsel for Hoppe, but was appearing for Morris, who was unavailable that day. The court continued the matter until June 26, 2001, for either setting the trial date or a change of plea.

On June 26, Hoppe appeared with Morris, who stated that he was not appearing as Hoppe's counsel of record, that he had met with Hoppe and Wiebe, but that Wiebe had not yet been retained as counsel. The court set the trial for October 24, 2001, and scheduled the matter for further review on July 10, 2001.

On July 10, Hoppe appeared by himself and informed the court that he was going to contact another attorney to represent him. The court scheduled the matter for further review on July 24, 2001.

On July 24, Hoppe again appeared without counsel and told the court that he had re-

tained Wiebe, but he could not be there that day. The court continued the matter until July 31, 2001.

On July 31, Hoppe again appeared without counsel, but stated that he expected Wiebe to be there. On further questioning by the court, he stated that he had not talked with Wiebe, but was under the impression he would be representing him based upon his communications with Morris. The court reviewed the lengthy delay and numerous hearings while Hoppe was attempting to retain counsel. As a condition of Hoppe's continued release on his own recognizance, the court ordered him to immediately contact the Idaho State Bar Association to obtain the names of three criminal defense attorneys and to contact them. The court continued the matter until August 7, 2001, for Hoppe to report back and, if he had not retained an attorney, to provide evidence of his financial condition for the appointment of a public defender.

On August 7, Hoppe appeared with Dayo Onanubosi, who stated that he was present on behalf of Wiebe and that Wiebe had filed a notice of appearance that morning. The court continued the matter until August 21, 2001, to make certain that there would be no problems with Wiebe receiving the discovery from Morris and that he would be prepared for trial on the date it was set. On August 21, 2001, Wiebe appeared with Hoppe and stated that he had no objection to the trial date and that there were no problems with discovery.

On October 16, 2001, Hoppe and Wiebe appeared in court for the previously scheduled pretrial conference. Wiebe stated that he was ready for trial. Hoppe also filed, pro se, a motion to dismiss on the ground of the insufficiency of the evidence and a motion to continue the trial to enable him to conduct further discovery.

On October 24, 2001, the date set for trial, Wiebe moved to withdraw as Hoppe's counsel on the ground that he and Hoppe had irreconcilable differences on how the case should be handled. After obtaining Hoppe's waiver of his right to a speedy trial, the court granted the motion to withdraw. The court then questioned Hoppe about his finances and, with his consent, appointed the public

defender to represent him. The court vacated the trial and scheduled a hearing on November 6, 2001, to reset it.

On November 6, Hoppe appeared in court with his public defender, who informed the court that Hoppe desired to represent himself. Hoppe stated that he could be ready for trial in sixty days. The court then engaged in a dialogue with Hoppe to determine whether he understood the consequences of self-representation and knowingly and intelligently waived his right to counsel. At the conclusion of that dialogue, the court asked Hoppe whether he desired to proceed without counsel, and Hoppe responded by asking whether he would be able to have an attorney advise him during the trial. The court stated that it would appoint an attorney to attend the trial and be available as standby counsel. Hoppe answered, "I think that would be sufficient." He then mentioned having someone help him in formulating questions, and, in response to further questioning by the court, he said that he had been speaking with a couple of people who may assist him, including Morris, who happened to be present in the courtroom. The court asked Morris whether he intended to represent Hoppe, and Morris answered that he had told Hoppe he would help him in pretrial preparation, but not in presenting evidence. The court then granted Hoppe's request to proceed pro se by stating, "I have previously appointed the public defender's office to represent you in this matter, and at this time I will just change that appointment to indicate that the public defender's office will be standby counsel for you at the trial."

The court asked the prosecutor and Hoppe how many days the trial would take. Hoppe stated that it depended upon what he received in response to the discovery request he intended to file. In response to questioning from the court, Hoppe stated that he was sure there was more evidence than the State had provided in discovery. After summarizing each of Hoppe's prior court appearances, the court stated, "Quite frankly, I'm having a difficult time finding that this isn't anything other than just a delaying tactic, Mr. Hoppe." Hoppe responded by stating that he had been unable to get documents he had re-

quested. The court asked the prosecuting attorney whether he had anything he had not turned over to Hoppe's attorneys, and the prosecutor responded that he did not. In response to further statements by the court, Hoppe stated that he had not seen fingerprint tests or lab results. The court then asked Morris whether there was anything the State had not turned over to him. He answered that the State had been very cooperative on discovery, that Wiebe had the fingerprint evidence and lab reports, and that he had turned them over to the public defender. The court then inquired of the public defender, who answered that he had not yet seen the file.

At that point, the court decided not to permit Hoppe to proceed pro se absent a showing of good cause. The court stated, "And at this point, Mr. Hoppe, I am not going to allow you to dismiss the public defender, absent a showing of very good cause, so I'm not going to grant your motion to proceed pro se at this time. If you still want to go it alone when the trial comes, I'll reconsider your request at that time, but I'm not going to continue to do this, Mr. Hoppe." The court added that having dealt with Wiebe, Morris, the public defender, and the prosecuting attorney for years, there had never been a problem with fully sharing discovery. The court concluded by stating that the case would be set for trial, that the trial would go forward on that date, and that until further order of the court the public defender would be Hoppe's attorney.

The case was then set for trial on January 23, 2002. On that day, the court dismissed the count of possession of methamphetamine upon motion by the State. The public defender represented Hoppe throughout the trial. During the fourth day of trial, Hoppe again requested to represent himself, and the court denied that request on the ground that Hoppe was not competent to do so. The jury found Hoppe guilty on both counts. After he was sentenced, Hoppe timely appealed.

■ The Idaho Court of Appeals first heard the appeal. It upheld his conviction and sentence. It determined that on November 6, 2001, the district court had denied Hoppe's request to represent himself on the ground it was made for the purposes of delay and that the record supported that determination. We granted Hoppe's petition for review. In cases that come before this Court on a petition for review of a court of appeals decision, this Court gives serious consideration to the views of the court of appeals, but directly reviews the decision of the lower court. *Head v. State*, 137 Idaho 1, 43 P.3d 760 (2002).

## II.  ANALYSIS

■ The Sixth Amendment to the Constitution of the United States guarantees to a defendant in a criminal case the right to proceed pro se when he or she voluntarily and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Lankford*, 116 Idaho 860, 781 P.2d 197 (1989). "Ultimately, the decision of whether to exercise the right to counsel or proceed pro se is for the defendant to make. The role of the trial court is simply to ensure that where the defendant waives the right to counsel he or she does so knowingly and intelligently." *Id.* at 865, 781 P.2d at 202. A defendant's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta v. California*, 422 U.S. 806, 836, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 582 (1975). "The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction.... And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* at 834, 95 S.Ct. at 2540, 45 L.Ed.2d at 581.

The State argues that the district court correctly denied Hoppe's request to represent himself after finding that it had been made for the purpose of delay. The record does not support that argument. After initially granting Hoppe's request to represent himself on November 6, 2001, the district court and Hoppe then engaged in a dialogue regarding Hoppe's belief that the State had not provided all discovery and his desire to conduct further discovery. The court reviewed the prior proceedings and commented

that it "was having a difficult time finding that this isn't anything other than just a delaying tactic." After further dialogue with Hoppe, and questioning the prosecutor and Morris as to whether the State had provided all discovery, the court stated, "And at this point, Mr. Hoppe, I am not going to allow you to dismiss the public defender, absent a showing of very good cause, so I'm not going to grant your motion to proceed pro se at this time." The reason given by the court for denying Hoppe's request to represent himself was that Hoppe failed to show very good cause for doing so. Hoppe had a constitutional right to represent himself, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Lankford*, 116 Idaho 860, 781 P.2d 197 (1989), and he was not required to show good cause for his desire to exercise that right.

Even if the court's passing reference to "a delaying tactic" could be construed as a finding that Hoppe was requesting self-representation to delay the proceedings, the record would not support such a finding. Morris initially represented Hoppe, but he withdrew because he had previously represented one of the State's witnesses. Morris' withdrawal was not at Hoppe's request. There was then a four-month delay from April 10, 2001, when the district court granted Morris' motion to withdraw, until August 7, 2001, when Wiebe filed a notice of appearance as counsel for Hoppe. That delay resulted from Hoppe attempting to obtain counsel of his choice. During approximately a month of that delay, Morris was attempting to negotiate a plea agreement on behalf of Hoppe. The trial scheduled for October 24, 2001, was vacated because the district court on that date granted Wiebe's request to withdraw as Hoppe's counsel. Hoppe did not fire Wiebe. Rather, Wiebe sought to withdraw because he and Hoppe disagreed on how the case should be tried. The court then appointed a public defender to represent Hoppe.

On November 6, 2001, Hoppe appeared in court with his public defender and asked that he be permitted to represent himself. When he did so, the trial had not yet been reset, and Hoppe stated that he would need sixty days to prepare for the trial. The district court reset the trial to commence on January 23, 2002, which was seventy-eight days later. Thus, Hoppe's request to represent himself would not have delayed the trial. The record does not show that Hoppe requested self-representation for the purpose of delay.

Thus, the district court erred when it refused to permit Hoppe to represent himself. The court focused upon the validity of Hoppe's reason for seeking to represent himself (his belief that the State was withholding discovery) rather than upon his right to represent himself. A defendant need not have a valid reason for seeking to act as his own attorney any more than he or she needs a valid reason to exercise any other constitutional right. "It is also well settled that the defendant has the right to reject court appointed counsel and conduct his own defense." *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980).

The State argues that the error was cured by Hoppe's failure to renew his request for self-representation on the day of trial and by his request to continue the trial to retain counsel. After it denied Hoppe's request on November 6, 2001, to represent himself because he had failed to show "very good cause," the court added, "If you still want to go it alone when the trial comes, I'll reconsider your request at that time." On the morning of trial, Hoppe requested that the trial be postponed a few days because he had received some money and wanted to retain counsel of his choice. He did not, at that time, ask to represent himself.

The court had previously ruled that Hoppe could not represent himself unless he showed "very good cause" for doing so. The court had also stated that the trial would go forward on the date it was set, but that Hoppe could renew his request for self-representation at that time. Given the court's ruling as to what Hoppe had to show in order to be granted the right to represent himself, his failure to ask again on the morning of trial did not cure the court's prior error in denying him his right of self-representation. Likewise, that error was not cured by Hoppe's request to continue the trial for a few days in order to retain counsel of his choice.

The right of self-representation includes the right to reject counsel chosen by the State. As the Supreme Court stated in *Faretta v. California*, 422 U.S. 806, 833–34, 95 S.Ct. 2525, 2540–41, 45 L.Ed.2d 562, 580–81 (1975) (footnotes omitted):

> But it is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want. The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them. And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice.

For whatever reason, Hoppe did not want court-appointed counsel. He had the constitutional right to reject such assistance. A request to retain counsel of one's choice is not inconsistent with a desire to reject court-appointed counsel.

In forcing Hoppe to accept against his will a court-appointed public defender, the court deprived him of his constitutional right to conduct his own defense. Therefore, the judgment must be vacated and the case remanded for further proceedings. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Because we have vacated the judgment, the other issues raised by Hoppe on appeal are rendered moot.

### III. CONCLUSION

The judgment is vacated and this case is remanded for further proceedings consistent with this opinion.

Chief Justice TROUT, and Justices SCHROEDER, KIDWELL and BURDICK concur.