IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38613

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | 2012 Opinion No. 21 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: April 18, 2012 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| ROBERT SCOTT LIPPERT, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Clearwater County. Hon. Carl B. Kerrick, District Judge.

Order on remand denying appointment of substitute counsel and judgment of conviction for sexual abuse of a child under sixteen years, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Robert Scott Lippert appeals from an order on remand denying the appointment of substitute counsel and his judgment of conviction for sexual abuse of a child under the age of sixteen years. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In July 2005, Lippert's daughter, K.Y., reported to police that Lippert had sexually abused her when she was fifteen years old in March 1998. K.Y. stated that the incident occurred after Lippert had required her and one of her sisters, B.W., to model recently-purchased undergarments and swimsuits for him. K.Y. further alleged that, after she modeled the clothing, her mother and Lippert required that she allow Lippert to give her a massage because she had complained of having a headache. K.Y. told police that Lippert next had her kneel in front of him, and he placed her head, face-down, in his lap. Lippert then allegedly rubbed her scalp,

1

shoulders, arms, and back for fifteen or twenty minutes, and she could feel that his penis became erect while her face was in his lap. Based on K.Y.'s report of this incident, the state charged Lippert with sexual abuse of a child under the age of sixteen years. I.C. § 18-1506.

Lippert requested and was provided with a public defender. At a pre-trial hearing, the district court rejected a request from Lippert to replace his public defender with another court-appointed attorney. The public defender ultimately represented Lippert at trial despite Lippert's subsequent indication, made on the day of trial just prior to jury selection, that he did not want the appointed public defender to represent him.

A jury found Lippert guilty as charged. The district court sentenced Lippert to a unified term of fifteen years, with a minimum period of confinement of six years. Lippert appealed, asserting that the district court erred by admitting prior bad acts evidence at his trial and by conducting an inadequate inquiry into his complaints about his court-appointed counsel. In *State v. Lippert*, 145 Idaho 586, 589, 181 P.3d 512, 515 (Ct. App. 2007), this Court affirmed the district court's evidentiary rulings, but held that the district court did not conduct an adequate inquiry into Lippert's complaints about his court-appointed counsel on the morning of the first day of his trial. Therefore, we remanded for further proceedings to provide Lippert a full and fair opportunity to present facts and reasons in support of his motion for substitute counsel. On remand, the district court held a hearing and considered briefing and argument on the issue. Lippert and his trial counsel testified. Thereafter, the district court determined that Lippert had not established good cause to support his motion for substitute counsel and entered an order denying Lippert's motion. Lippert appeals.

## II.

## ANALYSIS

Lippert argues that the district court abused its discretion by denying his motion for substitute counsel. Specifically, Lippert asserts that a complete, irrevocable breakdown of communication occurred between Lippert and his trial counsel and, therefore, the district court abused its discretion by concluding that good cause did not exist to justify the appointment of substitute counsel.

The Sixth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution guarantee the right to counsel. The right to counsel does not necessarily mean a right to the attorney of one's choice. *State v. Clark*, 115 Idaho 1056, 1058, 772 P.2d 263,

265 (Ct. App. 1989). Mere lack of confidence in otherwise competent counsel is not necessarily grounds for substitute counsel in the absence of extraordinary circumstances. *State v. McCabe*, 101 Idaho 727, 729, 620 P.2d 300, 302 (1980); *State v. Peck*, 130 Idaho 711, 713, 946 P.2d 1351, 1353 (Ct. App. 1997). However, for good cause a trial court may, in its discretion, appoint a substitute attorney for an indigent defendant. I.C. § 19-856; *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980); *Peck*, 130 Idaho at 713, 946 P.2d at 1353. The trial court must afford the defendant a full and fair opportunity to present the facts and reasons in support of a motion for substitution of counsel after having been made aware of the problems involved. *Clayton*, 100 Idaho at 898, 606 P.2d at 1002.

The trial court must conduct a meaningful inquiry to determine whether a defendant possesses good cause for his or her request for substitute counsel. *Lippert*, 145 Idaho at 596, 181 P.3d at 522. Specifically, the district court must make some reasonable, nonsuggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her Sixth Amendment right would be violated but for substitution. *Id.* Even when the trial court suspects that the defendant's requests are disingenuous and designed solely to manipulate the judicial process and to delay the trial, perfunctory questioning is not sufficient. *Id.*

Good cause includes an actual conflict of interest; a complete, irrevocable breakdown of communication; or an irreconcilable conflict which leads to an apparently unjust verdict. *Id.* Factors to be used in examining constitutional implications of a total breakdown in communication include: (1) whether the defendant's motion for new counsel was timely; (2) whether the trial court adequately inquired into defendant's reasons for making the motion; (3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to the communication breakdown. *United States v. Lott*, 310 F.3d 1231, 1250 (10th Cir. 2002); *Lippert*, 145 Idaho at 597, 181 P.3d at 523. If good cause is shown, the defendant is constitutionally entitled to the appointment of new counsel. *Lippert*, 145 Idaho at 597, 181 P.3d at 523. A defendant may not, however, manufacture good cause by abusive or uncooperative behavior. *Id.* Finally, the decision of whether to appoint substitute counsel lies within the discretion of the trial court and will only be reviewed for an abuse of discretion. *Id.*

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

The district court determined, and the parties do not contest, that Lippert's motion was timely and that the district court adequately inquired into Lippert's reasons for making the motion by holding a hearing and conducting a full inquiry into the issue upon remand. The district court also considered whether the conflict between Lippert and his trial counsel was so great that it led to a total lack of communication and precluded an adequate defense. In the district court's order denying Lippert's motion, the district court cited to *United States v. Doe*, 272 F.3d 116, 124 (2d Cir. 2001). In that case, the court found that the trial judge had not abused its discretion by refusing to appoint substitute counsel because the attorney-client relationship had not broken down to the point as to prevent communication. Specifically, the court stated:

> [W]hile the rift between [the defendant] and [appointed defense counsel] was at times intense as a result of [the defendant's] violent and aggressive nature, the conflict between the two was not "'so great that it . . . resulted in total lack of communication preventing an adequate defense.'" [*United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2011)] . . . . The record reveals that [the defendant] and [appointed defense counsel] did communicate prior to and during the course of the trial. Even after the district court repeatedly denied his withdrawal motions and after [appointed defense counsel] expressed fear for his own and his family's safety, [appointed defense counsel] carried out his duties as [the defendant's] counsel by, for example, (1) filing no less than nine motions in limine; (2) initially attempting to dissuade [the defendant] from testifying, (3) arguing before the court, once [the defendant] insisted on testifying, as to the admissibility of [the defendant's] prior felony drug conviction, (4) cross-examining witnesses, and (5) making numerous objections to the government's questioning during the trial. Despite the conflict between [the defendant] and [appointed defense counsel], it is clear that the two communicated in presenting [the defendant's] defense. Further, the district court credited [appointed defense counsel's] statements that he had given [the defendant] the discovery provided by the Government, met with [the defendant] to discuss strategy, and, despite the conflict, was willing to continue representing [the defendant] during trial. Based on these facts, we cannot say that the conflict between [the defendant] and [appointed defense counsel] prevented an adequate defense.

*Doe*, 272 F.3d at 124.

4

The district court explained that, given the relationship that existed in *Doe*, the attorney-client relationship that existed between Lippert and his trial counsel did not rise to the level of a total lack of communication precluding an adequate defense. The district court noted that Lippert's trial counsel presented Lippert with discovery, met with Lippert to review the discovery, filed motions on behalf of Lippert, discussed witnesses' testimony, located and interviewed witnesses on behalf of Lippert, and discussed whether Lippert would testify on his own behalf. The district court also noted that Lippert and his trial counsel communicated throughout the trial and during the sentencing hearing. Thus, the district court concluded that there was not a sufficient breakdown of communication so as to deprive Lippert of counsel.

The district court also considered whether Lippert substantially and unreasonably contributed to the communication breakdown. Specifically, the district court noted that Lippert's trial counsel testified Lippert was very difficult to deal with and would not discuss anything except to assert his innocence. The district court further explained that Lippert had to be brought into court on the day of his trial because he refused to come into the courtroom. As such, the district court concluded that Lippert substantially and unreasonably contributed to any breakdown in communication between Lippert and his trial counsel.

At the hearing on Lippert's motion for substitute counsel, Lippert's trial counsel testified he visited Lippert in jail thirteen times, discussed and agreed upon the disqualification of the initially-assigned trial judge, spoke with Lippert prior to and after the preliminary hearing, provided Lippert with all of the discovery provided by the state, filed motions in limine, tracked down potential witnesses as Lippert requested, and discussed Lippert's right not to testify at trial. Lippert's trial counsel also testified he met with Lippert at the jail shortly before Lippert's trial to discuss the trial and, during the trial itself, communicated with Lippert during breaks. Lippert's trial counsel further testified that, during Lippert's sentencing hearing, Lippert proceeded as his own counsel, but trial counsel remained by Lippert's side and answered several of Lippert's questions. Finally, Lippert's trial counsel testified that, while Lippert was initially a cooperative client, Lippert became very uncooperative over time and would only repeat that he was innocent and that the witnesses against him were liars.

The record shows that, in determining whether good cause existed to justify the appointment of substitute counsel based upon a complete, irrevocable breakdown of communication, the district court considered the appropriate factors. *See Lott*, 310 F.3d at 1250;

5

*Lippert*, 145 Idaho at 597, 181 P.3d at 523. The record also supports the district court's determination that good cause did not exist to justify the appointment of substitute counsel on such basis. We conclude that the district court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision to decline to appoint substitute counsel by an exercise of reason.

## III.

## CONCLUSION

Lippert was given a full and fair opportunity to present facts and reasons in support of his motion for substitute counsel. Lippert has failed to show that the district court abused its discretion by declining to appoint substitute counsel. Therefore, the order on remand denying appointment of substitute counsel and Lippert's judgment of conviction for sexual abuse of a child under the age of sixteen years are affirmed.

Judge LANSING and Judge GUTIERREZ, **CONCUR.**