# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42027

| | |
|---|---|
| STATE OF IDAHO, | ) 2015 Unpublished Opinion No. 699 |
| | ) |
| Plaintiff-Respondent, | ) Filed: November 9, 2015 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| ARNOLD DEAN ANDERSON, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction for possession of methamphetamine, affirmed.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Arnold Dean Anderson appeals from his judgment of conviction after he was found guilty of possessing methamphetamine and after he acknowledged that he was a persistent violator. On appeal, Anderson argues that the district court ignored his pretrial request to represent himself, that the court abused its discretion by not conducting an adequate inquiry when he requested substitute counsel prior to his sentencing hearing, and that his sentence is excessive. For the reasons that follow, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

After Anderson was charged by criminal complaint with possession of methamphetamine, a public defender was appointed to represent Anderson. Subsequently, the State filed an information charging Anderson with possessing methamphetamine and alleging

1

that he was a persistent violator. Thereafter, Anderson filed a request for new counsel, asserting several things his public defender failed or refused to do. The district court ordered that a new public defender represent Anderson, and a second public defender filed a notice of appearance on behalf of Anderson.

During a pretrial hearing, at which Anderson was not present, the second public defender informed the court that he was having difficulties with Anderson:

> I am having difficulties with Mr. Anderson with wanting to speak with me. He keeps telling me he wants to represent himself. I told him he'd be able to address that today. I did speak with [another attorney], who was looking at substituting in, so there may be a resolution to that. But I bring that to the Court's attention because it is causing some difficulty preparing for trial.

The prosecutor explained that Anderson "asked to represent himself [in another case]; however, we did continue, in the hopes that . . . some other attorney would be substituting in on those cases." The district court wanted to address the matter in a few days and noted that if Anderson "wants to represent himself, that's his choice we'll have the hearings and proceed." A notice of hearing was filed setting a hearing a few days later.

At that hearing, the prosecutor first brought out that Anderson intended to hire private counsel. The court asked the second public defender for clarification, and the second public defender explained that Anderson told him that Anderson had spoken to a private attorney. Anderson then addressed the court, clarifying that the private attorney he talked to would represent him if the trial were continued. The prosecutor also noted that the private attorney would also be substituting in for Anderson's other pending criminal case. Shortly after the hearing, the private attorney filed a stipulation for substitution of counsel, and the trial was continued.

On March 4, a jury found Anderson guilty of possessing methamphetamine in violation of Idaho Code § 37-2732(c)(1), and Anderson acknowledged that he was a persistent violator pursuant to I.C. § 19-2514. Sentencing was set for March 24. On March 17, a motion was filed pro se by Anderson listing this case and another case entitled "ICR 35 motion correction or reduction of sentence oral argument." The motion indicated service upon the prosecutor and on the public defender that had formerly represented Anderson. This motion generally complained about the court's prior failure to allow Anderson to represent himself, post-conviction matters, information presented at sentencing, and prior representation by the second public defender. It is difficult to determine if any of the matters raised specifically related to the present case. On

2

March 23, one day before his initially scheduled sentencing hearing, Anderson served a "motion to dismiss [counsel] [ineffective] assistance of [counsel]" through the jail's mail system. However, this document was not filed with the court until March 26, after the initial sentencing hearing. During the initial sentencing hearing, Anderson addressed the court about another issue, but made no reference to his desire to dismiss his attorney prior to the sentencing hearing or any existing conflict. The evidence to be considered for sentencing was presented and discussed. Thereafter, the court stated that it had seen the Rule 35 motion in the file that morning and indicated a desire to discuss its import. After counsel and Anderson had a discussion, counsel indicated that it appeared Anderson was lumping two cases into one, but that he felt that further discussion and clarification was necessary. The sentencing hearing was then continued until March 28.

As noted, Anderson's motion to dismiss counsel was filed after the initial sentencing hearing. The day after the motion was filed, Anderson's attorney filed a motion to withdraw, citing Anderson's motion as the basis for his request. Anderson listed numerous assertions in his motion of what his private attorney did not do or refused to do stemming from the performance of counsel in preparation for and during trial. Other than the caption, which sought to dismiss his attorney, Anderson did not indicate what type of relief he was seeking--whether he wanted a different attorney or wanted to represent himself.

At the continued sentencing hearing on March 28, the district court began by acknowledging that Anderson had "filed a motion to terminate [the private attorney]." After considerable discussion about what he wanted to do, Anderson indicated that he did not want to represent himself, could not hire a different private attorney, and did not want the public defender (whom he had previously discharged and complained about in the Rule 35 motion). Ultimately, however, Anderson stated: "I'll use the public defender, I guess, or conflict attorney, I don't know." Following additional discussion, the court denied the motions to dismiss and withdraw and proceeded to obtain the sentencing recommendations of counsel and pronounce sentence. The court sentenced Anderson to a unified sentence of twelve years, with four years determinate, to run concurrently with a sentence in another case.[1] Anderson appeals.

---

[1] According to the district court, Anderson was sentenced in the other case to a unified sentence of ten years, with three years determinate.

## II.

## ANALYSIS

Anderson raises three issues on appeal. First, he argues that the district court ignored his pretrial request to represent himself. He next contends that the court abused its discretion by not conducting an adequate inquiry when he requested substitute counsel prior to his continued sentencing hearing. Finally, he asserts that his sentence is excessive.

## A.     Request to Self-Represent

On appeal, Anderson argues that the district court ignored his pretrial request to represent himself. A criminal defendant has a Sixth Amendment right to represent himself. *Faretta v. California*, 422 U.S. 806, 819 (1975); *State v. Lankford*, 116 Idaho 860, 865, 781 P.2d 197, 202 (1989). Although Idaho case law does not set forth the requisite elements of an effective self-representation invocation, other jurisdictions require a criminal defendant to assert that right in a manner that "is timely, not for purposes of delay, unequivocal, voluntary, [and] intelligent." *See, e.g.*, *United States v. Maness*, 566 F.3d 894, 896 (9th Cir. 2009) (per curiam); *accord State v. Lippert*, 145 Idaho 586, 597, 181 P.3d 512, 523 (Ct. App. 2007) (*Lippert I*); *State v. Reber*, 138 Idaho 275, 277, 61 P.3d 632, 634 (Ct. App. 2002).[2]

At issue here is whether Anderson's request was unequivocal. A request is unequivocal when the court can be reasonably certain that a defendant wishes to represent himself in lieu of exercising his right to counsel. *See United States v. Carpenter*, 680 F.3d 1101, 1102 (9th Cir. 2012) (per curiam). This requirement serves to prevent defendants from "taking advantage of the mutual exclusivity of the rights to counsel and self-representation . . . by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel." *State v. Langford*, 882 P.2d 490, 493 (Mont. 1994) (quoting *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989)). Courts should "indulge in every reasonable presumption against waiver" of the right to counsel. *See Brewer v. Williams*, 430 U.S. 387, 404 (1977).

A defendant's invocation of his right to self-representation may be communicated indirectly to the court through his counsel. *People v. Cherry*, 961 N.Y.S.2d 380, 382 (N.Y. App.

---

[2]     The factors used in analyzing a criminal defendant's request to self-represent are used in several states and circuits (if not most states and circuits). *E.g.*, *United States v. Tucker*, 451 F.3d 1176 (10th Cir. 2006); *United States v. Bush*, 404 F.3d 263 (4th Cir. 2005); *State v. Towle*, 35 A.3d 490 (N.H. 2011); *State v. Madsen*, 229 P.3d 714 (Wash. 2010) (en banc).

Div. 2013). At the pretrial hearing, Anderson himself never stated that he wished to represent himself, as he was not present. Instead, the second public defender stated that he was having difficulty with Anderson and that "[Anderson] keeps telling me he wants to represent himself." The public defender went on to explain that another attorney might be "substituting in" and remarked that this substitution "may be a resolution." The public defender's statements taken together, while demonstrative of the difficult relationship between himself and Anderson, are not a clear and unequivocal invocation of Anderson's right to self-representation.

Moreover, even if we were to deem the attorney's request an unequivocal assertion on Anderson's behalf, an unequivocally asserted request for self-representation can still be waived by subsequent words or conduct indicating a change of intention. *People v. Abdu*, 215 P.3d 1265, 1268 (Colo. App. 2009); *see also Wilson v. Walker*, 204 F.3d 33, 38-39 (2d Cir. 2000) (holding that the defendant reasonably appeared to abandon his initial request to represent himself by voicing no dissatisfaction with his attorneys and by not reasserting his desire to proceed pro se); *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982) ("Even if defendant requests to represent himself, however, the right may be waived through the defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned the request altogether.").

Anderson suggests that Idaho case law does not recognize waiver of a defendant's invocation of the right to self-represent, citing *State v. Hoppe*, 139 Idaho 871, 88 P.3d 690 (2003). We do not agree that *Hoppe* stands for that proposition. In that case, the trial court considered and denied a defendant's pretrial motion to self-represent. *Id.* at 873-84, 88 P.3d at 692-93. The defendant challenged the court's denial on appeal, and the State argued that the defendant's failure to renew his request for self-representation on the day of trial cured the erroneous denial. *Id.* at 875, 88 P.3d at 694. The Supreme Court disagreed, holding that the defendant's failure to renew his request did not cure the court's deprivation of his constitutional right to conduct his own defense. *Id.* at 875-76, 88 P.3d at 694-95.

Unlike *Hoppe*, the district court did not deny the request made by Anderson's attorney. Instead, because Anderson was not present at the hearing, the court stated, "let's get that issue addressed. If he wants to represent himself, that's his choice and we'll have the hearings and proceed." The court indicated its intention to consider the matter further, but with Anderson present. Absent a denial of a request to proceed pro se, *Hoppe* is inapposite.

5

In deciding whether a defendant intends to abandon a motion for self-representation, a court should consider the totality of the circumstances. *State v. McLemore*, 288 P.3d 775, 786 (Ariz. Ct. App. 2012). In *McLemore*, a defendant filed a timely and unequivocal *Faretta* motion prior to his trial.[3] *McLemore*, 288 P.3d at 786. Although the court never held a hearing on that motion specifically, the defendant appeared before the court several times after the motion was filed, but never inquired about the pending motion. *Id.* The court held that although the defendant's failure to remind the court of his pending *Faretta* motion did not constitute per se abandonment, the totality of the circumstances surrounding his failure to act on the motion supported the conclusion that he had abandoned the motion.

Similar to *McLemore*, Anderson had an opportunity at his subsequent hearing to express his desire to represent himself. At that hearing, the court engaged in a discussion with both Anderson and his attorney about the current status of Anderson's counsel as well as Anderson's preference regarding counsel going forward. Neither Anderson nor his attorney indicated that Anderson wished to proceed pro se. Instead, Anderson told the court of his plan to retain private counsel and discussed the need to postpone his trial because of a scheduling conflict with the private counsel. Based upon the totality of the circumstances of Anderson's failure to assert his right to self-representation and his indication of plans to retain private counsel, the court reasonably determined that Anderson had abandoned his motion for self-representation.

Therefore, the district court did not ignore Anderson's assertion of his right to self-representation because it was not unequivocally asserted, and any hint of its assertion was subsequently abandoned.

**B.      Motions Regarding Attorney Representation**

Anderson next contends that the district court abused its discretion by denying his motion to dismiss counsel and not conducting an adequate inquiry when he requested substitute counsel during his sentencing hearing. The State avers that the district court did not abuse its discretion in denying the motion and that Anderson was required to demonstrate a constitutional basis for his motion for substitute counsel and that further inquiry was unnecessary. Before delving into Anderson's argument on appeal, we first address the State's contention that Anderson must demonstrate a constitutional basis to substitute counsel.

---

[3]      A *Faretta* motion refers to a defendant's motion to self-represent. *See Faretta v. California*, 422 U.S. 806 (1975).

6

Prior to July 1, 2013, Idaho Code § 19-856, enacted in 1967, provided the defendant a statutory basis for moving for the appointment of substitute counsel. Specifically, the defendant could move for substitute counsel, and the court could appoint substitute counsel "for good cause." I.C. § 19-856 (repealed 2013). Good cause included "an actual conflict of interest; a complete, irrevocable breakdown of communication; or an irreconcilable conflict which leads to an apparently unjust verdict." *State v. Lippert*, 152 Idaho 884, 887, 276 P.3d 756, 759 (Ct. App. 2012) (*Lippert II*) (citing *Lippert I*, 145 Idaho at 596, 181 P.3d at 522). Idaho case law has either directly or indirectly relied on that statute since *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980). Although the Idaho Legislature repealed I.C. § 19-856 in 2013, we are not persuaded that its repeal changed the legal landscape for defendants seeking to substitute counsel because this Court's treatment of the statute was premised largely upon Sixth Amendment constitutional principles.

The Sixth Amendment provides a right to the effective assistance of counsel. U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This includes the right to representation by conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *State v. Severson*, 147 Idaho 694, 703, 215 P.3d 414, 423 (2009). This guarantee does not entitle a defendant to representation by a particular attorney with whom he can, in his view, have a meaningful attorney-client relationship. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). However, if "the relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates [a defendant's] Sixth Amendment right to effective assistance of counsel." *United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir. 1998). Therefore, when a defendant timely raises the issue of a conflict, "the trial court is constitutionally obligated to determine whether an actual conflict of interest exists" through a thorough and searching examination of the potential conflict, preferably on the record.[4] *Severson*, 147 Idaho at 703-04, 215 P.3d at 423-24.

Anderson's motion to the court, titled "motion to dismiss [counsel] [ineffective] assistance of [counsel]," was not a clear request for substitute counsel. In his motion, Anderson alleged a variety of perceived failures of his counsel relating back to counsel's performance

---

[4] "Accordingly, it is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward." *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000).

before and during trial. Apart from the title, his motion did not suggest any requested relief. However, a proper and formal legal motion for substitute counsel is not required; a district court's duty to inquire into a defendant's dissatisfaction with current counsel arises when the defendant moves to discharge that counsel. *United States v. Iles*, 906 F.2d 1122, 1131 (6th Cir. 1990) (affirming general principle that a court must engage a defendant in person when he or she has "expressed dissatisfaction with counsel and has sought to have him removed"); *State v. Peck*, 130 Idaho 711, 713-14, 946 P.2d 1351, 1353-54 (Ct. App. 1997) (holding that after the defendant's pro se motion to dismiss counsel, the court should have conducted an inquiry into the reasons for the defendant's dissatisfaction).

At the sentencing hearing, the court properly engaged with Anderson to discern his intent regarding representation going forward. After Anderson's attorney addressed the court, the court then asked Anderson, "What is it you want to do?" Anderson started to discuss what a public defender had done, apparently in another case. The court rephrased its question and asked, "The question I'm asking you is, do you want to represent yourself at this sentencing hearing today, yes or no? What do you expect me to do? You want to fire [the private attorney]?" After Anderson again began talking about the previous public defender, the court re-asked Anderson what he wanted to do--whether he wanted to represent himself, hire another attorney, or ask for the court to reappoint a public defender. After Anderson indicated that he did not want an attorney from the public defender's office, the court again asked Anderson what he wanted to do:

| THE COURT: | What is the answer to my question? Do you want to represent yourself or do you want to hire another attorney? |
| MR. ANDERSON: | I can't afford an attorney. |
| THE COURT: | And you don't want the public defender. That pretty well narrows it down, doesn't it? |
| MR. ANDERSON: | Yes. |

The court then explained how the sentencing was going to work, and asked Anderson if he understood that there was a risk of self-representation; Anderson stated that he understood.

The court then queried whether Anderson was ready to represent himself, and Anderson said he was not. The court again asked Anderson what he wanted to do, and Anderson replied, "I'll use the public defender, I guess, or conflict attorney, I don't know." Anderson's attorney spoke up, noting that an attorney would likely be a conflict public defender. The court inquired of the State's position, and the prosecutor responded that he was ready to move forward. Turning to Anderson's attorney, the court asked the attorney whether he was prepared to

8

advocate on behalf of Anderson, and the attorney said yes. The court then denied both Anderson's motion to dismiss counsel and Anderson's attorney's motion to withdraw. Explaining first that the sentencing hearing scheduled for that day was "very simple in terms of at least procedure" and that there was "no purpose to be served whatsoever by further delaying this case," the court then found that Anderson was "continuing to abuse the public defender system of this county [and that Anderson was] playing games with this court." Specifically, the court stated, "I find this is an unacceptable delay in these proceedings. It's time to get this case resolved . . . ."

At the second sentencing hearing, the district court had before it Anderson's motion to dismiss counsel and counsel's motion to withdraw. Since neither requested appointment of substitute counsel, the court correctly inquired as to how Anderson wished to proceed regarding representation. Ultimately, Anderson's statement that "I'll use the public defender, I guess, or conflict attorney, I don't know," can be viewed as a request for substitute counsel as well and we will consider it as such.

We review a district court's denial of a motion for substitute counsel for an abuse of discretion. *Severson*, 147 Idaho at 702, 215 P.3d at 422; *see also United States v. Lindsey*, 634 F.3d 541, 554 (9th Cir. 2011). When a district court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In considering the second inquiry, we examine several factors: (1) the adequacy of the court's inquiry into the defendant's complaint; (2) the extent of the conflict; and (3) the timeliness of the defendant's motion. *Moore*, 159 F.3d at 1158-59. Although neither this Court nor the Idaho Supreme Court has previously adopted the Ninth Circuit's three-factor analysis, both Courts have referenced them. *E.g.*, *Severson*, 147 Idaho at 704, 215 P.3d at 424 (describing that, following a timely objection, a district court must "determine whether a conflict actually exists" after a thorough and searching inquiry); *Lippert II*, 152 Idaho at 887, 276 P.3d at 759 (explaining that the court "must make some reasonable, nonsuggestive efforts to determine the nature of the defendant's complaints").

The court must make the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern. *Severson*, 147 Idaho at 704, 215 P.3d at 424. In doing so, the court must provide the defendant with a "full and fair opportunity" to provide facts and reasons to justify the motion for substitute counsel. *Clayton*, 100 Idaho at 898, 606 P.2d at 1002. "It also should provide a sufficient basis for reaching an informed decision regarding whether to appoint new counsel." *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) (internal quotation marks and citations omitted). Even when the district court suspects an improper motive behind the motion, "perfunctory questioning is not sufficient." *Lippert II*, 152 Idaho at 887, 276 P.3d at 759; *see also Young v. State*, 102 P.3d 572, 577 (Nev. 2004) (holding that the district court's failure to conduct a more thorough inquiry into the substance of the defendant's alleged conflict with his attorney was error).

Here, Anderson's motion asserted a host of alleged failings of retained counsel at and in preparation for trial.[5] At the start of the continued sentencing hearing, Anderson's attorney began by referring to the first sentencing hearing and discussions regarding post-conviction issues which, in reference to the motion to dismiss, had "now turned into a real pleading, where the allegations there that will probably continue past his sentencing and into the next phase of things." As to Anderson's complaints, counsel remarked that "It's pretty well spelled out actually in the pleading." Counsel stated that it appeared that Anderson did not think he was effective and that, with the pleading, he had essentially or would file a lawsuit to that effect, presumably for post-conviction relief. Finally, counsel indicated that he believed that Anderson wanted to represent himself.

Anderson began by stating that he had wanted to represent himself from the start but was denied and that his second public defender would not withdraw or assist him. He continued: "I want to represent myself. He just--I sent you on that Rule 35 motion, I put everything in the

---

[5] On appeal, Anderson contends that one of the eleven paragraphs in the motion to dismiss could and should have been read to suggest a possible indication of a breakdown in communication in the period after trial and into sentencing. This contention is both textually and contextually untenable. The paragraph read: "[Counsel] failed to [accept] phone [calls] from defendant or investigate or locate discovery that public defender had in his [possession] to [present] to jury at trial." Nothing in the text of this contention suggests any present difficulties between Anderson and counsel. It specifically refers to trial. Moreover, it is contextually consistent with all of the other paragraphs in the pleading which also clearly recount alleged pretrial and trial failings of counsel.

Rule 35 motion that was filed." Anderson's articulated complaint, consistent with the Rule 35 motion, involved issues from the other case and early efforts in the present case to represent himself and complaints about the second public defender. When asked again what he wanted, Anderson stated that he did not want anyone from the public defender's office and further "I'd like to file a post-conviction on these two cases." After he stated that he did not want the public defender and could not afford another attorney, the court indicated that narrowed it down (apparently to self-representation), to which Anderson responded "Yes." The district court immediately began to provide the required advice about the risks of self-representation and asked if Anderson understood, to which he responded "Yes, sir." When then asked if that is what he wanted to do, Anderson said "No."

The court was aware of Anderson's complaints about counsel in the motion to dismiss counsel for ineffective trial assistance. Counsel indicated that Anderson's complaints about him were ineffective assistance allegations and in the nature of post-conviction claims. Anderson, while again lumping the two cases together, further indicated that he had "put everything in the Rule 35 motion that was filed." He further acknowledged the nature of his complaints by indicating he wanted to file post-conviction in both cases. Neither Anderson nor counsel indicated a breakdown in communications or an inability to complete sentencing.[6] Through the written submissions and statements of counsel and Anderson, the court was adequately apprised of the basis of Anderson's complaints. Consequently, further inquiry by the court was unnecessary to reach an informed decision on the motions.

As to the extent of any conflict, it is quite clear that Anderson had already made up his mind to proceed with post-conviction after the trial was completed. However, that situation is not particularly unique to this case as our Supreme Court has stated that "ineffective assistance of counsel claims can or should be known after trial." *Rhoades v. State*, 148 Idaho 247, 253, 220 P.3d 1066, 1072 (2009). More importantly, that fact does not necessarily suggest a conflict or complete breakdown in communication presently existing at the time of sentencing. While the court was in possession of the Rule 35 motion prior to the first sentencing hearing, Anderson made no mention of it or any other problems. Indeed, that motion primarily related to the other

---

[6]     After sentencing, the district court indicated to Anderson that if he wanted to appeal, he should have his present counsel file the notice of appeal. After that was accomplished, the court would consider Anderson's counsel's services terminated. In response, Anderson said: "I'll keep him."

11

case and remote events involving another lawyer. Similarly, while Anderson had placed the motion to dismiss in the mail the day before the first sentencing hearing, neither the court nor counsel was in possession of it and Anderson made no mention of the pleading or problems proceeding that day. At the second sentencing hearing, there was certainly discussion regarding the allegations of ineffective assistance at trial and the Rule 35 motion, but no comments about present difficulties in communication or strategy for sentencing. In fact, counsel unequivocally indicated to the court a readiness to advocate for Anderson regarding an appropriate sentence. It is also important here to recall the posture of the case at the time the motions were made. Before any complaints were leveled at trial counsel, at the first sentencing hearing the parties had completed the submission of evidence to consider for sentencing and discussion regarding the presentence investigation report. According to the court, all that was left to do was for the parties to make sentencing recommendations and the imposition of sentence.

The posture of the case also relates to whether the defendant's motion was timely. The timeliness inquiry takes into account the State's interest in avoiding undue delay. *Martel v. Clair*, ___ U.S. ___, ___, 132 S. Ct. 1276, 1286-87 (2012). The potential for inconvenience and delay should be weighed against the defendant's Sixth Amendment right to counsel of choice. *Moore*, 159 F.3d at 1161. This right to counsel of choice extends to the sentencing stage. *Estrada v. State*, 143 Idaho 558, 562, 149 P.3d 833, 837 (2006). However, a defendant cannot use the right to counsel of choice to unduly hinder the fair, efficient, and orderly administration of justice. *United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002).

Even when the motion is made on the day of trial, the court must make a balancing determination between the potential for delay and the defendant's constitutional right to counsel of choice. *United States v. D'Amore*, 56 F.3d 1202, 1206 (9th Cir. 1995), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143 (9th Cir. 1999) (en banc); *see also United States v. Nguyen*, 262 F.3d 998, 1004 (9th Cir. 2001) (noting significance in the district court's failure to consider the length of delay necessary to substitute a new attorney); *United States v. Corona-Garcia*, 210 F.3d 973, 975 (9th Cir. 2000) (holding that district court did not err in finding motion for substitute counsel untimely where defendant did not provide basis for motion that justified the inconvenience and delay); *United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997) (remanding case where district court made no findings on the issue of timeliness of a motion for substitute counsel made right before sentencing). An unreasoning and arbitrary

12

insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel. *Morris*, 461 U.S. at 11-12.

Anderson placed the motion to dismiss in the mail the day before the first sentencing hearing. He made no objection to proceeding with sentencing matters. He made no preliminary mention of it or while addressing the court. It was only after the discussion regarding evidence and exhibits for sentencing was concluded that some issues arose, which the court related to the Rule 35 motion. As noted, the motion to dismiss counsel was not received and filed by the court until two days later. Anderson's lack of diligence in pursuing his motion should also be considered with the stage of the proceedings. As noted by the district court, all that was left to complete sentencing was recommendations and imposition of sentence. The district court considered his motion unduly delayed when it saw "no purpose to be served whatsoever by further delaying this case," found the motion "an unacceptable delay in these proceedings."[7]

The district court adequately inquired and was apprised of the basis for Anderson's motion to dismiss counsel and for substitute counsel. Based upon the nature of Anderson's articulated complaint regarding counsel and the timing of the motions, the district court did not abuse its discretion in denying the motions.

## C.     Excessive Sentence

Anderson claims that the district court abused its discretion by imposing an excessive sentence. As noted, Anderson was sentenced to a term of twelve years, with four years determinate. Anderson contends that the district court failed to adequately consider his rehabilitative potential, difficult life, and family support. Sentencing is a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established and need not be repeated here. *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). When reviewing the length of a sentence, we consider the

---

[7]     In regard to the unacceptable delay, the district court also specifically found that Anderson was "continuing to abuse the public defender system of this county, you are playing games with this court." This finding is unchallenged by Anderson. However, while a defendant cannot use the right to counsel to hinder the administration of justice, *United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002), we need not specifically address this basis for upholding the district court's order on the motions.

defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion.

## III.

## CONCLUSION

The district court did not ignore Anderson's pretrial assertion of his right to self-representation because he never unequivocally asserted that right. The district court did not abuse its discretion in denying the motions to dismiss counsel, withdraw as counsel, and for substitute counsel. Anderson has not shown that his sentence is excessive. Thus, Anderson's judgment of conviction and sentence are affirmed.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.